T.C. Memo. 2010-84


UNITED STATES TAX COURT


FRANKLIN M. AND ERLINDA L. SYKES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7275-08.                 Filed April 21, 2010.


     R determined a deficiency and an accuracy-related
penalty pursuant to sec. 6662(a), I.R.C., for the 2004 tax
year.  After R's concessions, the issues for decision are:
(1) Whether Ps are entitled to a casualty loss deduction
pursuant to sec. 165(c), I.R.C.; and (2) whether Ps are
liable for the accuracy-related penalty pursuant to sec.
6662(a), I.R.C.

     <u>Held</u>:  Ps are liable for the deficiency and the
accuracy-related penalty.


Franklin M. Sykes, pro se.

<u>Donna F. Herbert</u>, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of an alleged income tax deficiency that respondent determined for petitioners' 2004 tax year.  After concessions by respondent,[1] the issues for decision are:  (1) Whether petitioners are entitled to a $28,877 casualty loss claimed on Schedule A, Itemized Deductions, pursuant to section 165(c) for water damage sustained to their home; and (2) whether petitioners are liable for a section 6662 accuracy-related penalty.[2]

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings.  At the time they filed their petition, petitioners resided in California.

On or about September 29, 2004, petitioners' home sustained water damage due to the bursting of a bathroom sink water pipe.  Petitioners submitted a claim to their insurance company and

---

[1]Respondent conceded expense adjustments of $1,913 relating to auto and travel, $2,091 relating to depreciation for petitioners' home, and $4,681 relating to mortgage interest for petitioners' home.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

received a settlement check on or about February 23, 2005, in the amount of $4,330.51. The insurance company's evaluation of the damage was based on a building repair estimate of $6,098.71, from which the company subtracted a $1,000 deductible and $768.20 for depreciation.

Petitioners allege that the loss relating to the water damage was greater than that allowed by their insurance claim. They claim that the value of their home was reduced by approximately $45,000 as a result of the water damage, creating an additional casualty loss for the 2004 tax year of $40,080.[3] Petitioners base the estimate of their loss on an appraisal of their home conducted by Mr. Albert L. Romero.[4] Mr. Romero's appraisal estimates the value of petitioners' property as of November 1, 2004. It assumes that the property was in "average overall condition during the effective date of the appraisal" and states that "Adjustments were made for room count (at $10M per room / $8M per bath) and gross living area (at $40 per SF rounded)." Petitioners use the adjustment values in Mr. Romero's

---

[3]With adjustments the total casualty loss claimed on petitioners' Form 1040X, Amended U.S. Individual Income Tax Return, for 2004 was $28,877.

[4]The parties dispute the admissibility of Mr. Romero's appraisal under Rule 143(g), formerly Rule 143(f). Because of respondent's objection and petitioners' failure to call the appraiser as a witness to identify his expert report and to be available for cross-examination about the report, it is inadmissible. In any event, the outcome of the case does not turn on the admissibility of the appraisal.

appraisal to estimate the amount of the damage caused by the burst pipe. Additionally, petitioners base their estimate on the "loss of use" of the portion of their home that suffered water damage during the period they conducted the repairs.

OPINION

I. Burden of Proof

The Commissioner's determination of a taxpayer's liability is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner. Petitioners have not established that they meet the requirements under section 7491(a)(1) and (2) for such a shift. Consequently, the burden of proof remains on them. Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any of the deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must keep sufficient records to substantiate any deductions claimed. Sec. 6001.

II. Casualty Loss Expenses

Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the allowance of losses in the

case of individuals.  Section 165(c)(3) allows as a deduction to an individual certain losses commonly referred to as casualty losses.  A casualty loss is allowable to a taxpayer for a loss of property not connected with a trade or business or a transaction entered into for profit if the loss results from "fire, storm, shipwreck, or other casualty".  See id.  Pursuant to section 165(h)(2), a net casualty loss is only allowed to the extent it exceeds 10 percent of adjusted gross income.

The amount of the casualty loss allowed under sec. 165(a) is the lesser of the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or "The amount of the adjusted basis prescribed" in section 1.1011-1, Income Tax Regs., "for determining the loss from the sale or other disposition of the property involved."  Sec. 1.165-7(b)(1), Income Tax Regs.

The method of valuation to be used in determining a casualty loss is prescribed in section 1.165-7(a)(2), Income Tax Regs., which provides as follows:

> (i) In determining the amount of loss deductible under * * * [section 165], the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under * * * [section 165] shall be limited to the actual loss resulting from damage to the property.

(ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.

Only the amount of the loss resulting from physical damage to property is deductible under section 165. Squirt Co. v. Commissioner, 51 T.C. 543, 547 (1969), affd. 423 F.2d 710 (9th Cir. 1970).

In 2007 petitioners retained Albert L. Romero, an allegedly certified appraiser, to assess the value of their home after sustaining the water damage. In his appraisal Mr. Romero determined that the fair market value of petitioners' home as of November 1, 2004, was $715,000, not taking into account the water damage. However, petitioners claim that the value of their home in September 2004, before the pipe burst, was $700,000. Petitioners allege that the appraisal conducted by Mr. Romero was overstated due to the "rapidly increasing appreciation of property in Southern California during the period in question" and hence, the comparable property values he used were not reliable. However, Mr. Romero used six comparable properties in his appraisal, showing values of $660,500, $718,500, $728,500, $712,000, $742,000, and $746,500. To support their position that Mr. Romero's appraisal was overstated, petitioners cite

zillow.com, an online appraisal service, to estimate that the fair market value of their home in 2004, not taking into account the water damage, was approximately $700,000.

To determine the value of their home after the water damage, petitioners use Mr. Romero's valuations of $10,000 per bedroom, $8,000 per bathroom and $40/square foot, calculating a loss of approximately $44,831.20. This calculation assumes the complete removal of two bedrooms, a bathroom, and various common areas from their home. In summary, petitioners claim the value of their home after the water damage was $655,000, resulting approximately in a $45,000 casualty loss.

A review of the evidence compels us to conclude that both petitioners' estimates of the before and after values of their home do not constitute "competent appraisals", nor are they otherwise adequate to satisfy the requirements of the statute and regulations. Petitioners provide no probative evidence as to why Mr. Romero's before appraisal of $715,000 is "overstated" or why their estimate of $700,000 is more reliable. Further, petitioners provide no probative evidence that their calculation of the casualty loss, based on Mr. Romero's per-room and square-foot valuations, is an accurate portrayal of the amount of the damage. Petitioners are not experts in the area of home valuation, and yet they have provided no evidence to the Court that their $45,000 estimate for the water damage is properly

calculated. Petitioners did not call any witnesses or even themselves to substantiate the valuation of their casualty loss, nor did they submit any supplemental materials to establish that their estimation is reliable.

Additionally, petitioners have provided no evidence to sustain their assertion that "the casualty loss was not only the cost of tearing out, replacing the walls; and, remediating the mold; but, the substantial loss of use of space, which was not a part of the insurance company assessment." With regard to the costs of the repair work, petitioners have not provided the Court with any documentation that shows the actual cost or extent of the repairs, either in the form of receipts or work reports. Further, petitioners have submitted no evidence concerning any loss of use of the residence or any costs associated with such alleged loss of use other than cryptic notes of the appraiser, Mr. Romero, stating that adjustments were made for "$10,000 per room, $8,000 per bathroom, and $40 per square foot." Mr. Romero's notes do not explain why these estimates were computed or how the amounts were determined. Regardless of whether petitioners could quantify the "loss of use" of their property, only loss for actual physical damage is deductible under section 165.

The burden of proving the amount of the casualty loss is on petitioners, and they have not established that they are entitled to more than has been allowed.

III. <u>Section 6662 Penalties</u>

Under section 7491(c), respondent bears the burden of production with respect to petitioners' liability for the section 6662(a) penalty. This means that respondent "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).

Section 6662(a) and (b)(1), (2), and (3) imposes an accuracy-related penalty equal to 20 percent of any portion of an underpayment attributable to a taxpayer's negligence or disregard of rules or regulations, a substantial understatement of tax, or a substantial valuation misstatement. Respondent alleges that petitioners' actions constitute either negligence or disregard of the rules or regulations. Therefore, the Court will not address whether petitioners' actions constitute a substantial understatement of tax or a substantial valuation misstatement.

Section 6662(c) defines "negligence" as "any failure to make a reasonable attempt to comply with the provisions of" the Internal Revenue Code. "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax

Regs. "[D]isregard" of rules and regulations means any "careless, reckless, or intentional disregard" of rules and regulations. Sec. 6662(c). "A disregard of rules or regulations is 'careless' if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation." Sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. Id. Further, an honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. Id.

Petitioners submitted no evidence with respect to the section 6662 penalty. In their petition for redetermination petitioners claim that their accountant at the time "didn't know what he was doing." However, petitioners did not call their

accountant as a witness at trial, nor did they testify themselves as to his alleged incompetence. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99-100 (2000), affd. 299 F.3d 221 (3d Cir. 2002).

Petitioners also failed to keep adequate books and records and/or to substantiate properly the items in question. Such a failure is evidence of negligence. See sec. 1.6662-3(b), Income Tax Regs. Consequently, we conclude that respondent has met his burden of production for his determination of the accuracy-related penalty based on negligence or disregard of rules or regulations. Additionally, with regard to that determination, petitioners have failed to meet their burden of proving that they acted with reasonable cause and in good faith. We therefore sustain respondent's determination that petitioners are liable for the accuracy-related penalty on the underpayment associated with the disallowed itemized deductions of petitioners.

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

Decision will be entered under Rule 155.